UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEJANDRO PRADO,

Plaintiff,

v.

SWARTHOUT, et al.,

Defendants.

No. 2:15-cv-1866 WBS DB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action under 42 U.S.C. § 1983. Plaintiff alleges defendants violated his rights under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Equal Protection Clause by failing to provide him with a shower he could safely use. Before the court is defendants' motion for summary judgment (ECF No. 36.), plaintiff's opposition (ECF No. 43), and defendants' reply (ECF No. 44). For the reasons set forth below, the court will recommend defendants' motion for summary judgment be granted in part and denied in part.

## BACKGROUND

### I. Procedural History

Plaintiff commenced this action in September 2015. (ECF No. 1.) After the close of discovery, defendants filed the instant motion for summary judgment (ECF No. 36). Plaintiff filed an opposition (ECF No. 43) and defendants filed a reply (ECF No. 44).

////

## II. Allegations in the Complaint

This action proceeds on plaintiff's First Amended Complaint, in which plaintiff alleges the following. (ECF No. 12.) The events giving rise to the claims occurred while plaintiff was incarcerated at California State Prison Solano ("CSP-SOL") housed in Administrative Segregation ("Ad-Seg"). (Id. at 5-6.) Plaintiff named the following defendants: (1) Gary Swarthout, Warden of CSP-SOL; (2) Arnold, Chief Deputy Warden; (3) Matteson, Associate Warden; (4) Blackwell, Correctional Lieutenant ("Lt."); and (5) Jimenez,[1] Correctional Lt. (Id.)

On September 3, 2013, October 10, 2013 and April 29, 2014, plaintiff's foot and cane slipped as he was getting out of the shower and he fell, injuring himself. (Id. at 7-8.) Plaintiff alleges each fall occurred as he was stepping down from the shower step to get out of the shower. (Id. at 7.) Plaintiff filed grievances after each incident seeking accommodations such as a ramp or shower chair, that the shower be made ADA compliant, or he be transferred to an ADA compliant facility. (Id. at 7-8.) Defendants denied plaintiff's appeals at various levels and/or their responsibility for inmates' safety generally. (Id. at 8-9.)

Plaintiff alleged each defendant had a duty to "see that Ad-Seg was ADA and Armstrong compliant. Failure to do so subjected plaintiff to cruel and unusual punishment, personal injury, denial of equal protection . . . ." (Id. at 12.)

## SUMMARY JUDGMENT

Defendants argue they are entitled to summary judgment because they were unaware of the risk of harm to plaintiff and once they were made aware of the risk they took reasonable measures to abate the risk of future harm. Defendants also assert that plaintiff's claims fail because they have been sued based on their role in responding to plaintiff's grievances. Defendants argue, they are entitled to qualified immunity because the right to ADA housing for an inmate who is not deemed medically disabled to the point that it impacts the inmates

////

---

[1] Upon screening the amended complaint, the court found plaintiff failed to state a cognizable claim against Jimenez. (ECF No. 15 at 12.) Plaintiff elected to proceed on the amended complaint as screened and consented to the dismissal of Jimenez. (ECF No. 16.)

placement was not clearly established at the time of the events giving rise to the claim.  (ECF No. 36.)

## I.     Legal Standards

### A.  Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. at 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must

leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

### B. Deliberate Indifference under the Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

A prison official's failure to provide accommodations for a disabled inmate may constitute deliberate indifference to the inmate's safety in violation of the Eighth Amendment. Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998); see also La Faut v. Smith, 834 F.2d 389, 393 (4th Cir. 1987) (prison officials violated the Eighth Amendment where paraplegic inmate was denied adequate toilet facilities for nearly eight months); Johnson v. Hardin County, Kentucky, 908 F.2d 1280, 1284 (6th Cir. 1990) (credible testimony that prison officials denied disabled inmate crutches and other accommodations was sufficient to show deliberate indifference in violation of the Eighth Amendment); Casey v. Lewis, 834 F.Supp. 1569, 1580 (D.Ariz.1993) (failure to provide disabled inmates accommodations violated the Eighth Amendment); Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (allegations that officials denied disabled inmate accommodations were sufficient to state an Eighth Amendment claim). In Frost, La Faut, Bradley, and Casey, the courts characterized the plaintiffs' accommodation claims as a conditions of confinement issue. In Johnson, the court evaluated the plaintiff's accommodation claim as an inadequate medical care issue. In any event, issues of inhumane conditions of confinement, failure to attend to medical needs, failure to provide for an inmate's safety, or some combination thereof, are appropriately scrutinized under the "deliberate indifference" standard. See Whitely v. Albers, 475 U.S. 312, 319 (1986).

1       The deliberate indifference standard involves an objective and subjective prong.  First, the

2   alleged deprivation must be, in objective terms, "'sufficiently serious' . . . ."  Farmer v. Brennan,

3   511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the

4   prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."

5   Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment

6   for denying humane conditions of confinement only if he knows that inmates face a substantial

7   risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-

8   45.  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the

9   risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk.  Id. at

10  844-45.  Mere negligence on the part of the prison official is not sufficient to establish liability,

11  but rather, the official's conduct must have been wanton.  Id. at 835; Frost, 152 F.3d at 1128.

**C.  Americans with Disabilities Act**

13      Title II of the ADA "prohibit[s] discrimination on the basis of disability."  Lovell v.

14  Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II provides that "no qualified individual

15  with a disability shall, by reason of such disability, be excluded from participation in or be denied

16  the benefits of the services, programs, or activities of a public entity, or be subject to

17  discrimination by such entity."  42 U.S.C. § 12132.  Title II of the ADA applies to inmates within

18  state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 118 S. Ct. 1952, 1955 (1998); see

19  also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447,

20  453-56 (9th Cir. 1996).

21      To establish a violation of the ADA, a plaintiff must show that: (1) he or she is a qualified

22  individual with a disability; (2) he or she was excluded from participation in or otherwise

23  discriminated against with regard to a public entity's services, programs, or activities; and (3)

24  such exclusion or discrimination was by reason of his or her disability.  See Simmons v. Navajo

25  County, 609 F.3d 1011, 1021 (9th Cir. 2010); Lovell, 303 F.3d at 1052.  Under Title II, the failure

26  of a public entity to provide disabled persons with reasonable modifications constitutes

27  discrimination within the meaning of the Act.  See, e.g., Townsend v. Quasim, 328 F.3d 511, 517

28  (9th Cir. 2003); 28 C.F.R. § 35.130(b)(7).

A qualifying "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of the person; (B) having a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). A "major" life activity is one that is "of central importance to daily life." Toyota Motor Mfg., Inc. v. Williams, 534 U.S. 184, 197 (2002), overruled on other grounds by the ADA Amendments Act of 2008. A limitation on a major life activity is "substantial" if it interferes to a large degree with a major life activity. Id.

Furthermore, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. The ADA plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.

**D. Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Hartmann v. Calif. Dept. of Corrs. and Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). State prison inmates retain a right to equal protection of the laws guaranteed by the Fourteenth Amendment. Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Lee v. Washington, 390 U.S. 333, 334 (1968)). An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class, Hartmann, 707 F.3d at 1123, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601-02 (2008).

////

Disability is not a suspect class for Equal Protection purposes. <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1225 (9th Cir. 2008). In determining whether a disabled inmate is similarly situated to non-disabled inmates, the court should ask "whether the disabled plaintiff is equally capable for the purpose at issue." <u>Hansen v. Rimel</u>, 104 F.3d 189, 190 (8th Cir. 1997), <u>see also</u> <u>Clark v. California</u>, No. 96-cv-1486 FMS, 1998 WL 242688, *4-5 (N.D. Cal. May 11, 1998) (where developmentally disabled prisoners lacked skills to fill out forms, thereby limiting their access to medical care and educational programming, for purposes of Equal Protection analysis they were not similarly situated to non-developmentally disabled prisoners). Claims brought under any theory must satisfy the intent requirement, that is, the plaintiff must show that some discriminatory purpose underlies the policy. <u>See</u> <u>Village of Arlington Heights v. Metro. Hous. Dev. Corp.</u>, 429 U.S. 252, 264-66 (1997); <u>Pierce</u>, 526 F.3d at 1225.

In the prison setting, claims based upon the Equal Protection Clause are analyzed under the same <u>Turner</u> test that courts apply in assessing the constitutionality of claims under the First Amendment. <u>Turner v. Safely</u>, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); <u>see also</u> <u>Shakur v. Schriro</u>, 514 F.3d 878, 891 (9th Cir. 2008); <u>DeHart v. Horn</u>, 227 F.3d 47, 61 (3d Cir. 2000) (stating the <u>Turner</u> test applies to both equal protection and free exercise claims).

### E. Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights.'" <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), <u>receded from</u>, <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable

but mistaken judgments about open legal questions." Ashcroft v. al—Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting Ashcroft v. al—Kidd,563 U.S. at 741 (some internal marks omitted)). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[D]etermining whether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al—Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

## II.     Material Facts

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 36-3.) Plaintiff's filing in opposition to defendants' motion for summary judgment fails to comply with Local Rule 260(b). Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with

each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."

While "[p]ro se litigants must follow the same rules of procedure that govern other litigants," King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc), it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curium). The unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff filed along with his opposition brief an affidavit and statement of undisputed facts ("PSUF") in support of his opposition to defendants' motion for summary judgment. (ECF No. 43 at 15-18.) Plaintiff does not dispute any of facts presented by defendants and cites to defendants' undisputed facts throughout. In light of plaintiff's pro se status the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in the DSUF.

## A. Undisputed Facts

At all relevant times plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation housed in the Ad-Seg unit at CSP-SOL. (DSUF (ECF No. 36-3

at 1-9) ¶ 1; PSUF (ECF No. 43 at 15-18) ¶ 1.)  On March 13, 2012 plaintiff had surgery on his

right foot.  (DSUF (ECF No. 36-3) ¶ 9; PSUF (ECF No. 43) ¶ 5.)  Following surgery, plaintiff

was given an accommodation chrono allowing him to use crutches, orthopedic shoes, and an extra

pillow for one month, it also noted plaintiff was not to put weight on his right foot.  (DSUF (ECF

No. 36-3) ¶ 10; PSUF (ECF No. 43) ¶ 6.)  Plaintiff's accommodation chrono was updated by Dr.

Rohlfing on June 7, 2013.  (Id. at ¶¶ 15, 27.)  Rohlfing determined plaintiff required the following

accommodations: a bottom bunk, a cane, orthopedic shoes, a mobility vest, and the use of waist

chains.  (Id.)  Rohlfing classified plaintiff under the disability code DNM, which signifies that

plaintiff's mobility impairment prevented him from walking more than 100 yards without pause

or without the use of a cane.  (Id.)

Plaintiff was transferred to CSP-SOL on June 20, 2013.  (DSUF (ECF No. 36-3) ¶ 35;

PSUF (ECF No. 43) ¶ 7.)  When plaintiff arrived at CSP-SOL he had an accommodation chrono

allowing him to use a cane and that noted he should avoid vigorous use of his right leg.  (DSUF

(ECF No. 36-3) ¶ 14.)  Following an altercation with another inmate on July 15, 2013, plaintiff

was placed in Ad-Seg.  (DSUF (ECF No. 36-3) ¶ 36.)  On September 3, 2013, plaintiff fell

getting out of the shower hitting his head, hip, and knee.  (DSUF (ECF No. 36-3) ¶ 37; PSUF

(ECF No. 43) ¶ 8.)  Plaintiff filed a grievance complaining about his fall on September 5, 2013

and requesting that the showers in Ad-Seg be made ADA compliant or that he be transferred to

another institution.  (DSUF (ECF No. 36-3) ¶ 42; PSUF (ECF No. 43) ¶ 11.)  Lt. Blackwell

interviewed plaintiff regarding his grievance to determine if plaintiff had additional facts to add.

(DSUF (ECF No. 36-3) ¶ 43.)  Associate Warden Matteson answered the grievance at the first

formal level of review and determined that plaintiff's current accommodation chrono did not

indicate he had a disability requiring the use of an ADA compliant shower.  (DSUF (ECF No. 36-

3) ¶ 44.)

Plaintiff fell getting out of the shower a second time on October 10, 2013.  (DSUF (ECF

No. 36-3) ¶ 46; PSUF (ECF No. 43) ¶ 12.)  Dr. Ramos updated plaintiff's accommodation chrono

on October 18, 2013.  (DSUF (ECF No. 36-3) ¶ 47.)  Plaintiff's updated chrono indicated that his

disability code was updated to DPO, signifying that he was an intermittent wheelchair user, who

required a low bunk, no stairs, and relatively level terrain with no obstructions in the path of travel.  (Id. at ¶ 47, 49.)  Also on October 18, 2013, Chief Deputy Warden Arnold signed a second level response to plaintiff's grievance for Warden Swarthout.  (Id. at ¶ 48.)  Arnold's response also indicated that because plaintiff's disability code had been updated, plaintiff now met the criteria for transfer to another institution based on his mobility limitations.  (DSUF (ECF No. 36-3) ¶ 49; PSUF (ECF No. 43) ¶ 13.)  Arnold's response also indicated that plaintiff would be housed in the ADA compliant Correctional Treatment Center ("CTC") while he was awaiting transfer.  (DSUF (ECF No. 36-3) ¶ 49; PSUF (ECF No. 43) ¶ 14.)  Arnold submitted Prado's transfer placement decision to the Departmental Review Board on October 18, 2013.  (DSUF (ECF No. 36-3) ¶ 50.)

Plaintiff could not be transferred to the CTC due to safety concerns.  (DSUF (ECF No. 36-3) ¶ 50.)  Plaintiff was given use of a shower chair and walker to assist him in getting in and out of the shower while he remained in Ad-Seg pending his transfer.  (DSUF (ECF No. 36-3) ¶¶ 51, 52.)  Plaintiff remained in Ad-Seg until his transfer on April 30, 2014.  (PSUF (ECF No. 43) ¶ 16.)

### B.  Disputed Facts

Plaintiff states the shower's tile lip is several inches high.  (PSUF (ECF No. 43) ¶ 10.)  He claims the lip on the side showers is eleven inches, but that the lip in the middle shower, where he allegedly fell is much higher.  (ECF No. 43 at 5.)  Plaintiff has not provided any documentary evidence showing the shower lip is higher than eleven inches.  Defendants state the lip is approximately eleven inches high on the outside of the shower stall and six inches high on the inside of the shower.  (DSUF (ECF No. 36-3) ¶ 39.)

Plaintiff claims he fell once more after he was designated as DPO and given accommodations.  Defendants claim plaintiff did not fall again after he received new accommodations and access to a shower chair.  (ECF No. 36-2 at 15.)  Plaintiff's amended complaint contains a grievance and related medical forms detailing a third fall on April 29, 2014.  (ECF No. 12 at 30-33.)

////

Plaintiff also states he was never transferred to the CTC as defendants claim. (PSUF (ECF No. 43) ¶ 16.) However, defendants acknowledge that although Arnold advised plaintiff should be housed in the CTC, it was determined plaintiff had to remain in Ad-Seg because of institutional safety concerns. (DSUF (ECF No. 36-3) ¶ 50.)

Plaintiff further claims that defendants did not produce records showing how frequently he showered while housed in Ad-Seg beyond October 10, 2013. (ECF No. 43 at 9-10.) However, defendants provided plaintiff's segregation records from July 15, 2013 through May 7, 2014. (See ECF No. 36-3 at 125-153.) Additionally, those records indicate plaintiff continued to shower routinely until he was transferred. (DSUF (ECF No. 36-3) ¶ 53.)

## III. Analysis

### A. Eighth Amendment

At the outset the court notes that, to the extent plaintiff claims that defendants should have known that it was unsafe for him to use the shower before his first fall, defendants cannot be liable where they were unaware of plaintiff's need for accommodations. See Frost, 152 F.3d at 1129 (prison officials were deliberately indifferent where they knew plaintiff fell several times using crutches in the shower and did not provide accommodations); Adams v. Schwartz, No. 2:04-cv-2474 MCE GGH P, 2008 WL 544390 at *8 (E.D. Cal. Feb. 26, 2008) (finding plaintiff had not shown defendants were aware of a risk of harm to plaintiff by way of, for example, previous falls or earlier grievances). Defendants are entitled to summary judgment on any claim that they were liable before plaintiff fell.

Plaintiff's speculation that defendants must have known that it was unsafe for him to use the shower without an accommodation is not sufficient to create a material issue of fact sufficient to deny the motion for summary judgment. See Farmer, 511 U.S. at 844 ("[P]rison officials who lacked knowledge of a risk cannot be said to have inflicted punishment."); see also Nelson v. Pima Cmty. College, 83 F.3d 1075, 1081-82 (1996) (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). The court now turns to defendants' actions following the first fall.

////

### 1. Defendants Blackwell and Matteson

Defendant Blackwell conducted an interview of plaintiff regarding plaintiff's first grievance based on his September 3, 2013 fall. (ECF No. 36-2 at 13.) Blackwell determined plaintiff was evaluated by medical staff following the fall and no injuries were noted. Defendant Blackwell had no further involvement in this matter. Defendant Matteson responded to plaintiff's initial grievance at the first level of review. (ECF No. 36-2 at 13.) Matteson denied plaintiff's request for a transfer or ADA compliant showers, finding that plaintiff's disability status did not require flat terrain with no obstructions in the path of travel. (Id.) This decision was in compliance with plaintiff's then current accommodation chrono and medical records. (Id.) Defendants state that under CDCR policy only plaintiff's treating physicians could determine what accommodations plaintiff required. (Id.)

Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).

Further, defendants have put forth evidence that plaintiff has not disputed, showing that Blackwell and Matteson relied on the assessments of plaintiff's treating physician that no further accommodations were necessary and that only plaintiff's treating physician could order further accommodations. Greeno, 414 F.3d at 656 (citing Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004) (non-physician defendants cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaint of a prisoner who was already being treated by the prison doctor" and if "a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."); see also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (dismissing two non-

medical prison personnel because "neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor).

Plaintiff has failed to put forth sufficient evidence to show that defendants Blackwell and Matteson acted with deliberate indifference in denying his request for accommodations. They cannot be considered deliberately indifferent where they deferred to the assessment of plaintiff's treating physician in denying plaintiff's request for additional accommodations. Accordingly, summary judgment should be granted in favor of defendants Blackwell and Mattes on plaintiff's Eighth Amendment claim.

### 2. Arnold

Defendants have put forth evidence, that plaintiff has not disputed, showing that Arnold partially granted plaintiff's appeal. In doing so, Arnold referred plaintiff for transfer and recommend that plaintiff be housed in the CTC until such time as he could be transferred. Additionally, plaintiff was seen by his physician, who updated his disability classification to DPO, indicating that plaintiff was an intermittent wheelchair user who required relatively level terrain. Plaintiff was also given use of a shower chair and a walker to assist him in traversing the shower lip while he remained housed in Ad-Seg. Arnold has met his initial burden of producing evidence showing that he acted reasonably in responding to the risk of harm to plaintiff. The burden now shifts to plaintiff to demonstrate that Arnold's response was unreasonable.

Plaintiff has put evidence into the record showing that he fell again after being provided additional accommodations. (ECF No. 12 at 30-33). However, the fact that plaintiff fell again after being provided further accommodations does not tend to show that Arnold's response was unreasonable. See Farmer, 511 U.S. at 844-45 (even where a prison official knows of a substantial risk to an inmate's health but responds reasonably to the risk, he or she cannot be found liable under the Cruel and Unusual Punishments Clause, even if harm is ultimately not averted).

Plaintiff has not produced any other evidence to show that Arnold's response was unreasonable under the circumstances. Plaintiff's arguments and opinion that prison officials

should have responded differently to his requests are not sufficient to create a material factual

dispute from which a rational trier of fact could determine that Arnold acted deliberately

indifferent.  Accordingly, summary judgment should be granted in favor of defendant Arnold on

plaintiff's Eighth Amendment claim.

### 3. Swarthout

Defendants have put forth evidence, that plaintiff has not disputed, showing that

Swarthout did not review any of plaintiff's grievances and thus, was not aware of the risk of harm

to plaintiff.  "Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051,

1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the

facts from which the inference could be drawn that a substantial risk of serious harm exists,' but

that person 'must also draw the inference.'"  Id. at 1057 (quoting Farmer, 511 U.S. at 837).  "If a

prison official should have been aware of the risk, but was not, then the official has not violated

the Eighth Amendment, no matter how severe the risk."  Id. (citing Gibson v. County of Washoe,

Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).   Accordingly, summary judgment should be

granted in favor of defendant Swarthout on plaintiff's Eighth Amendment claim.

### B. Americans with Disabilities Act

Defendants do not contest plaintiff's status as an individual with a disability who

otherwise is qualified to participate in and receive services from the CDCR.  Therefore, this

court's inquiry will focus on the last two factors concerning whether plaintiff was excluded from

participation in or denied benefits, and such exclusion was by reason of his disability.  See

Simmons, 609 F.3d at 1021.

Defendants argue that summary judgment should be granted because Swarthout had no

personal involvement in the events plaintiff claims violated his rights under the ADA.  However,

such an argument mischaracterizes the law.  Warden Swarthout may be liable in his official

capacity for ADA violations because suing an individual in his official capacity is treated the

same as suing the entity itself.  See Miranda B v. Kitzhaber, 328 F.3d 1181, 1187 (9th Cir. 2003)

(citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)) ("[A] suit against a state

official in his or her official capacity is not a suit against the official but rather is a suit against the

official's office."); <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (official capacity suit should be treated as a suit against entity).

As the warden, Swarthout is the proper defendant, in his official capacity, for plaintiff's ADA claim against the prison and there is no requirement that he be personally involved in the violation. <u>Hartman</u>, 707 F.3d at 1127 ("An official-capacity suit 'represents only another way of pleading an action against an entity of which an officer is an agent.'") (quoting <u>Kentucky</u>, 473 U.S. at 165). To recover monetary damages, plaintiff must prove intentional discrimination, which in turn requires a showing of deliberate indifference. However, he is not required to show that Swarthout personally acted with deliberate indifference. <u>Daniels v. Tolson</u>, No. 1:13-cv-0202 AWI SKO (PC), 2015 WL 1007984 at *3 (E.D. Cal. Nov. 12, 2015) (citing <u>Duvall</u>, 260 F.3d at 1138).

"When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." <u>Duvall</u>, 260 F.3d at 1139. Next, "a public entity is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation," and "a public entity does not act by proffering just any accommodation: it must consider the particular individual's need when conducting an investigation into what accommodations are reasonable." <u>Id.</u>

Plaintiff filed grievances after each fall alerting the institution to his need for accommodations so that he could shower safely and specifically requested a transfer. Thus, the institution was on notice of plaintiff's request for an accommodation. Defendants do not dispute that plaintiff filed grievances requesting accommodations. Additionally, defendants acknowledged that once plaintiff's disability status was updated to DPO, indicating he required relatively level terrain, he met the requirements for housing at a facility that could accommodate his mobility issues. (DSUF (ECF No. 36-3) ¶ 50; ECF No. 36-2 at 13-14.) Arnold submitted plaintiff's transfer decision to the Departmental Review Board on October 18, 2013. (<u>Id.</u>) However, records show plaintiff remained in Ad-Seg at CSP-SOL, for approximately six months,

until his transfer on April 30, 2014.  (ECF No. 43 at 17; ECF No. 36-3 at 63.)  Defendants do not explain why plaintiff remained in Ad-Seg at CSP-SOL for approximately six months after it was determined that he met the requirements for housing at a facility that could accommodate his mobility needs.

Similarly, in <u>LaFaut v. Smith</u>, 834 F.2d 389, 392 (4th Cir. 1987), a mobility impaired inmate was confined in a cell with no handicap restroom facilities.  Although the inmate complained about the facilities to prison officials immediately upon arrival at the prison, the officials did not transfer him to a room with "adequate toilet facilities" for three months. <u>Id.</u> The court explained:

> We recognize that prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and to maintain institutional security.  There is nothing in the record before us, however, to justify the inordinate delays in accommodating appellant's needs in light of the practicality and availability of various solutions.  Prison officials should not ignore the basic needs of a handicapped individual or postpone addressing those needs out of mere convenience or apathy.

<u>Id.</u> at 394 (internal quotations and citations omitted).

Defendants have shown that they provided plaintiff with a walker and shower chair to help him traverse the step into the shower.  However, they have not produced any facts showing they conducted a fact-specific inquiry to determine how to best accommodate plaintiff.  Absent facts indicating such an inquiry occurred, summary judgment should not be granted.  <u>See Mooring v. Dep't of Corr. and Rehab.</u>, No. 2:14-cv-1471 MCE KJN, 2015 WL 6163449 at *4 (E.D. Cal. Oct. 14, 2015) (defendant's failure to even mention a fact-specific investigation in their motion makes summary judgment on plaintiff's ADA claim inappropriate).  Further, a rational trier of fact could infer that the institution was deliberately indifferent based on the lengthy delay in transferring plaintiff to an institution that could accommodate his mobility issues. Thus, summary judgment should be denied as to plaintiff's ADA claim.

**C.  Equal Protection**

"Because 'the disabled do not constitute a suspect class' for equal protection purposes, a governmental policy that purposefully treats the disabled differently from the non-disabled need

18

only be 'rationally related to legitimate legislative goals' to pass constitutional muster." <u>Lee</u>, 250

F.3d 668, 687 (9th Cir. 2001) (quoting <u>Does 1-5 v. Chandler</u>, 83 F.3d 1150, 1155 (9th Cir.

1996)).  Thus, to defeat summary judgment on his equal protection claim, a prisoner must set

forth specific facts showing there is a triable issue as to whether: (1) he was treated differently

from similarly situated inmates; (2) such unequal treatment was not reasonably related to a

legitimate penological objective; and (3) such unequal treatment was the result of invidious

discrimination against plaintiff.  <u>Smith v. Woodford</u>, No. C 04-4793 RMW (PR), 2012 WL

2061535 at *4 (N.D. Cal. June 7, 2012).

Plaintiff was treated differently from other inmates who required level terrain because he

was required to traverse a step to enter and exit the shower.  Defendants have put forth evidence

showing that plaintiff had to remain housed in Ad-Seg while awaiting transfer due to security

concerns.  (DSUF (ECF No. 36-3) ¶ 50; ECF No. 36-3 at 58-61.)  Thus, defendants have shown

there was a penological interest, here security concerns, for treating plaintiff differently than other

inmates who required level terrain.

Further, to succeed on an equal protection claim, a prisoner must show that officials

intentionally acted in a discriminatory manner.  <u>More v. Farrier</u>, 984 F.2d 269, 271-72 (8th Cir.

1993) (holding federal courts, absent evidence of invidious discrimination, should defer to

judgment of prison officials); <u>Village of Arlington Heights</u>, 429 U.S. at 264-66 (Claims brought

under any theory must satisfy the intent requirement, that is, the plaintiff must show that some

discriminatory purpose underlies the policy.).

Plaintiff's allegations that he was treated differently are sufficient to state a claim for

violation of his equal protection rights.  However, at this stage of the proceedings, plaintiff must

come forward with specific evidence to create a triable issue of fact as to any element of his claim

for which he will have the burden at trial.  Conclusory allegations that speculate why defendants

failed to take further action to ensure plaintiff could safely shower are insufficient to provide a

genuine issue of material fact of whether there was invidious discrimination.  <u>See</u> <u>Leer v.</u>

<u>Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988).  Plaintiff must do more than attack the credibility of

defendants' evidence.  <u>See</u> <u>National Union Fire Ins. Co. v. Argonaut Ins. Co.</u>, 701 F.2d 95, 97

(9th Cir. 1983).  There are no facts in the record that show some discriminatory intent on the part of defendants.

Because plaintiff is not a member of a suspect class, defendants have shown a legitimate penological purpose for treating plaintiff differently than other similarly situated inmates, and plaintiff has not put forth any evidence showing a discriminatory motive, defendants are entitled to summary judgment on plaintiff's equal protection claim.

### D.  Qualified Immunity

Defendants also seek summary judgment on the issue of qualified immunity.  The court does not have to reach the issue of qualified immunity on plaintiff's Eighth Amendment and Equal Protection claims because the court found that plaintiff had not put forth sufficient evidence to show that defendants violated his rights.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  However, as stated above the court has found that there is a triable issue of material fact regarding plaintiff's ADA claim.  However, the defense of qualified immunity is not available on plaintiff's ADA claim.

Plaintiff has sued Warden Swarthout in his official capacity as warden in place of naming the institution.  A defendant who is sued in his or her official capacity is not eligible for a qualified immunity defense.  See Cmty. House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 965 (9th Cir. 2010) ("Qualified immunity [] is a defense available only to government officials sued in their individual capacities[,] not to those sued only in their official capacities.") (citing Kentucky, 473 U.S. at 165-68 ("In an official-capacity action, [defenses like qualified immunity] are unavailable.").  Accordingly, the defense of qualified immunity is not available to defendant Swarthout on plaintiff's ADA claim.

////
////
////
////
////
////

20

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 36) be granted in part and denied in part as follows:

   a. Defendants' motion on plaintiff's Eighth Amendment claims should be granted;

   b. Defendants' motion on plaintiff's ADA claim should be denied;

   c. Defendants' motion on plaintiff's Equal Protection claim should be granted; and

2. This case should proceed only on plaintiff's his ADA claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 4, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB12
DLB1/Orders/prisoner-civil rights/prad1866.msj

21