UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ALEJANDRO PRADO, | No. 2:15-cv-01866 WBS DB |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| GARY SWARTHOUT, et al., | |
| Defendants. | |

----oo0oo----

Plaintiff, a state prisoner proceeding pro se, filed this action alleging violations of 42 U.S.C. § 1983 and the Americans with Disabilities Act. (First Amended Complaint ("FAC") (Docket No. 12.)) The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

Defendants moved for summary judgment (Docket No. 36), and on February 5, 2019, the magistrate judge filed findings and recommendations regarding that motion ("Findings and Recommendations")(Docket No. 45). In them, the magistrate judge

1

recommended granting defendants' Motion for Summary Judgment with respect to plaintiff's constitutional claims and denying it with respect to plaintiff's ADA claim. These findings and recommendations were served on all parties and contained notice to all parties that any objections to the findings and recommendations were to be filed within twenty-one days.

Defendants and plaintiff separately filed objections to the findings and recommendations (Docket Nos. 50, 51).[1] In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court has conducted a de novo review of defendants' Motion for Summary Judgment.

I. Factual and Procedural Background

Plaintiff's allegations arise out of his experiences as an inmate in the custody of the California Department of Corrections. At all times relevant to the allegations of the First Amended Complaint, plaintiff was housed in the Administrative-Segregation unit ("Ad-Seg") of the California State Prison Solanao ("CSP-SOL"). (Defs.' Statement of Undisputed Facts ("DSUF") ¶ 1 (Docket No. 36-3); Plaintiff's Affidavit and Statement of Undisputed Facts ("PSUF") ¶ 1 (Docket No. 43 at 15-18).)

The outside edge of the shower in the CSP-SOL's Ad-Seg

---

[1] Plaintiff also filed a "Reply to the Defendant's Objection to the Magistrate Judge's Findings and Recommendations; Motion to Appoint An Expert Witness." (Docket No. 52.) Courts "generally" utilize an expert witness when "scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or decide a fact in issue." Ledford v. Sullivan, 105 F.3d 354, 358-59 (7th Cir. 1997). The evidence at issue in this case is not so complex that the appointment of an expert is necessary to assist the trier-of-fact. Accordingly, plaintiff's Motion to Appoint an Expert Witness (Docket No. 52) is denied.

2

unit was bordered by a tile lip which plaintiff claims is "several inches" high and defendants describe as "eleven inches high on the outside of the shower stall, and six inches high on the inside of the shower". (PSUF ¶¶ 9-10; DSUF ¶ 39.) On September 3, 2013, plaintiff fell while exiting the Ad-Seg unit's shower. (DSUF ¶ 37; PSUF ¶ 8.) On September 5, 2013, plaintiff filed a grievance about the fall; in it, he requested that the showers be made ADA compliant or that he be transferred to another institution. (DSUF ¶ 42; PSUF ¶ 11.) In response to the grievance, plaintiff was interviewed by Correctional Lt. Blackwell. (DSUF ¶ 43.) The prison's associate warden Matteson subsequently determined that plaintiff's accommodation chrono[2] did not indicate he required the use of an ADA compliant shower. (DSUF ¶ 44.)

On October 10, 2013, plaintiff again fell while in the shower. (DSUF ¶ 46; PSUF ¶ 12.) On October 18, 2013, plaintiff's accommodation chrono was updated; plaintiff was classified as "DPO,"[3] indicating that he intermittently used a wheelchair and required relatively low terrain with no obstructions in the path of travel. (DSUF ¶¶ 47, 49.) On that same day, October 18, 2013, Chief Deputy Warden Arnold signed a second-level response to plaintiff's grievance. (Id. ¶ 48.) The

---

[2] A "chrono" is a form used by physicians treating inmates in the custody of the California Department of Corrections to document any accommodations an inmate requires because of a medical condition.

[3] "DPO" is a code used by California's Department of Corrections to classify an inmate's disability. Inmates who are "DPO" are eligible for a disability placement through the Department of Corrections' Disability Placement Program.

3

response indicated that because of plaintiff's new classification, he met the criteria for transfer to another institution that could better accommodate his mobility impairments. (DSUF ¶ 49; PSUF ¶ 13.)[4] No later than October 25, 2018, defendant provided plaintiff access a shower chair and walker. (DSUF ¶¶ 51-52.)

On April 30, 2014, plaintiff was transferred to the California Medical Facility at Vacaville ("CMF"). (DSUF ¶ 54.)

### B. Disputed Facts

Plaintiff claims that he fell "several more times after 10/10/13, up through the time he transferred to [California Medical Facility] on 04/30/14" (PSUF ¶ 16.) He supports this claim with an incident report and medical records related to a fall on April 29, 2014. (FAC, Exhibit C at 26/44, 30-33/44.) Defendants state that there is no evidence plaintiff fell after receiving access to the shower chair and walker. (Mot. for Summ. J. at 9.)[5]

Defendant states that once provided with the shower chair and walker, plaintiff could "sit on the chair, lift his legs over the tile ledge, and swing his legs and feet into the shower" and "use [the] walker as a stabilizing device to help him get into the shower." (DSUF ¶¶ 51-52.) Though plaintiff did not

---

[4] Arnold's response indicated that pending plaintiff's transfer, plaintiff would be housed in the prison's Correctional Treatment Center--which had accessible showers. (DSUF ¶ 49; PSUF ¶ 14.) Despite this, plaintiff remained in the Ad-Seg unit throughout his time at CSP-SOL; he could not be placed in the CTC because of concerns about his vulnerability to violence. (DSUF ¶ 50.)

[5] For purposes of adjudicating this motion, the court assumes plaintiff's assertion that he fell on April 29 2014 is true.

4

directly dispute this claim in his opposition to defendants' Motion for Summary Judgment, his Motion to Appoint an Expert Witness implicitly disputes these claims by alleging that they are "based upon sheer speculation." (Mot. to Appoint an Expert Witness at 2.) Plaintiff does not point to any evidentiary support for this allegation.

II. <u>Legal Standard</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. <u>Id.</u> Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

III. <u>Discussion</u>

A.  Plaintiff's Claims

Having carefully reviewed the entire file, the court finds the magistrate judge's findings and recommendations are supported by the record and proper analysis with respect to the following issues: (1) plaintiff's Eight Amendment claims; and (2) plaintiff's equal protection claim.  However, for the following reasons, the court does not adopt the magistrate judge's recommendation with respect to the remaining claim.

B.  ADA Claim

1.  Applicable Law

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To prevail on a claim under Title II, a plaintiff must show "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services . . . or was otherwise discriminated against by the public entity; and (3) such exclusion, denial . . . or discrimination was by reason of his disability."  Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001) (citing Weinreich v. L.A. Cty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997)).

The implementing regulations of Title II provide that "[a] public entity shall make reasonable modifications in policies, practice, or procedures when the modifications are necessary to avoid discrimination on the basis of disability,

unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Determining whether a modification or accommodation is reasonable is a fact-specific, context-specific inquiry. Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1048 (9th Cir. 1999). A public entity "does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001). In evaluating ADA claims brought by inmates, the court may "consider, with deference to the expert views of the facility administrators, a detention or correctional facility's legitimate interests . . . when determining whether a given accommodation is reasonable." Pierce v. County of Orange, 526 F.3d 1190, 1217 (9th Cir. 2008).

2. Analysis

The CDCR is a public entity and the showers it provides inmates are a "program or service" within the meaning of the ADA. See Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 672 (7th Cir. 2012). Moreover, it is undisputed that following the October 18, 2013 adjustment to his chrono, plaintiff was a "qualified individual with a disability" within the meaning of the ADA. (See Defs.' Objs. to Findings and Recommendations ("Objections") at 7 (Docket No. 50).) Finally, it is undisputed that following the October 18, 2013, adjustment to plaintiff's chrono indicating that he required relatively low terrain with no obstructions in

7

the path of travel, the Ad-Seg unit showers--which are bounded on at least one side by a raised tile lip that is several inches high (PSUF ¶¶ 9-10; DSUF ¶ 39)--were not accessible to plaintiff without some form of accommodation.

At issue, then, is whether plaintiff was provided with reasonable modifications that allowed him access to a shower during the period between October 18, 2013, and April 30, 2014.

The magistrate judge provided two bases for her recommendation that defendants' Motion for Summary Judgment be denied with respect to plaintiff's ADA claim: first, that the record lacked facts showing that defendants conducted a "fact-specific inquiry to determine how to best accommodate plaintiff" (Findings and Recommendations at 18,) and second, that based on the delay in transferring plaintiff to a facility with accessible showers, "a rational trier of fact could infer that the institution was deliberately indifferent" to plaintiff's lack of access to accessible showers. (Id.)

The magistrate judge is correct that once public entities, correctional facilities among them, receive a request for accommodation, they are "required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." See Duvall, 260 F.3d at 1139 (9th Cir. 2001). Merely proffering an accommodation is not enough; the public entity "must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." (Id.) In evaluating the adequacy of a public entity's "fact-specific inquiry," or lack thereof, courts have looked to whether a given inquiry was sufficiently fact-specific

8

to facilitate the identification of a reasonable accommodation. See Mooring v. Dep't of Corr. & Rehab., No. 2:14-CV-01471 MCE KJN, 2015 WL 6163449, at *4 (E.D. Cal. Oct. 14, 2015) (holding that a defendant's "failure to even mention" a fact-specific inquiry into plaintiff's disability rendered summary judgment for defendant on plaintiff's ADA claims inappropriate in case where amputee plaintiff was provided with shower chair but was nonetheless forced to hop on one leg from wheelchair to shower); Sengupta v. City of Monrovia, No. CV0900795ABCSJHX, 2010 WL 11515299, at *5 (C.D. Cal. July 28, 2010)(denying summary judgment when officers ignored deaf arrestee's requests for a sign language interpreter and made no effort to ascertain what accommodations he required).

In the instant case, however, the court finds that defendants did engage in a fact-specific inquiry reflecting a contextualized consideration of plaintiff's mobility limitations and the potential of a shower chair and/or walker to mitigate their effects. Writing on October 25, 2013, Captain Wamble observed that "[i]n an effort to assist inmate Prado to traverse [the ledge bordering the Ad-Seg unit shower] he has been provided with the use of a shower chair to sit in and lift his legs over the ledge and/or a walker which he can use as a stabilizing device to assist him in stepping over the ledge. Both apparatuses are available for his use whenever he showers, and the decision on which apparatus [sic] has been left to inmate Prado as to which is the easiest and most comfortable for him on any given day." (Docket No. 36-3 at 91/153). Wamble's report evidences defendants' attention to plaintiff's particular

9

limitations and capacities.

The accommodation provided to plaintiff was apparently sufficient to accommodate plaintiff's disability. The record indicates, and plaintiff has not disputed, that plaintiff took routine showers between October 18, 2013 and April 29, 2014. (Docket No. 36-3 at 133/153-152/153). The day after his alleged April 29th fall, plaintiff was transferred to CMF. Moreover, there is no evidence that the shower chair and walker were so poorly suited to plaintiff's needs that using them to access the shower caused him severe pain or exacerbated his medical problems. Cf. Schmidt v. Odell, 64 F. Supp. 2d 1014, 1033 (D. Kan. 1999) (denying summary judgment to jailers on ADA claim brought by double amputee who was not timely provided with a shower chair and was therefore only able to access the shower by crawling and sitting on the floor or by standing--with great pain--on his residual legs).[6]

If plaintiff had not been provided with reasonable accommodations before his transfer to CMF, a reasonable inference of deliberate indifference might be drawn, as suggested by the magistrate judge, from the delay in transferring him. However, because the court concludes that plaintiff was afforded a timely fact-specific inquiry and reasonably accommodated with the shower chair, no such inference may be drawn from the delay in transferring him.

---

[6] Even if it is true that plaintiff fell more than once between the time he was provided with the chair and the time he was transferred, it would not alter the conclusion that defendants conducted an appropriate inquiry or that the accommodation of the chair was reasonable.

10

Accordingly, because plaintiff has not provided evidence to support an essential element upon which he will bear the burden of proof at trial, namely, that he was "excluded from participation in or denied the benefits of a public entity's services" as a result of his disability, defendants' motion for summary judgment on plaintiff's ADA claim must be granted.

IT IS THEREFORE ORDERED that:

1. The findings and recommendations (Docket No. 45), are adopted in part and rejected in part as set forth herein.

2. Defendant's Motion for Summary Judgment (Docket No. 36) is GRANTED.

3. The Clerk of Court shall close this case.

Dated: April 10, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE